# EXHIBIT 1

Electronically FILED by Superior Court of California, County of Riverside on 07/25/2024 07:36 PM
Case Number CVRI2404312 000010241712 - Jason B. Galkin, Executive Officer/Clerk of the Court By Cynthia Ronczyk Montalvo, Clerk

1 | **WINTERS & ASSOCIATES**
Jack B. Winters, Jr. (SBN 82998)
2 | Sarah Ball (SBN 292337)
8489 La Mesa Boulevard
3 | La Mesa, CA 91942
Tel: (619) 234-9000
4 | Fax: (619) 750-0413
Email: jwinters@singletonschreiber.com
5 | Email: sball@einsurelaw.com

6 | **NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
7 | Alex Tomasevic (SBN 245598)
Jake W. Schulte (SBN 293777)
8 | 225 Broadway, 19th Floor
San Diego, California 92101
9 | Telephone: (619) 325-0492
Facsimile: (619) 325-0496
10 | Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
11 | Email: jschulte@nicholaslaw.org

12 | Attorneys for Plaintiff, JAMES HUGHES, Individually, and
on Behalf of the Class
13 |

14 | *For Additional Counsel, See Next Page*

15 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

16 | **IN AND FOR THE COUNTY OF RIVERSIDE, ~~GENERAL UNLIMITED~~**
Riverside Historic Courthouse

17 | JAMES HUGHES, Individually, and on Behalf of the Class,

Case No.: CVRI2404312

18 | **INDIVIDUAL AND CLASS ACTION COMPLAINT FOR:**

19 | Plaintiff,

20 | v.

**(1) DECLARATORY RELIEF OR JUDGMENT (CAL. CIV. CODE § 1060, *ET SEQ.*);**

JACKSON NATIONAL LIFE INSURANCE COMPANY, a Michigan Corporation; and DOES 1 through 10, Inclusive,

21 |
22 |

**(2) BREACH OF CONTRACT;**

23 | Defendants.

**(3) UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*);**

24 |

25 | **(4) FINANCIAL ELDER ABUSE;**

26 | **(5) BAD FAITH; and**

27 | **DEMAND FOR JURY TRIAL**

28 |

INDIVIDUAL AND CLASS ACTION COMPLAINT; AND DEMAND FOR JURY TRIAL

**SINGLETON SCHREIBER, LLP**
Christopher R. Rodriguez (SBN 212274)
Andrew D. Bluth (SBN 232387)
Michelle M. Meyers (SBN 236387)
1414 K Street, Suite 470
Sacramento, California 95814
Telephone: (916) 248-8478
Email: crodriguez@singletonschreiber.com
Email: abluth@singletonschreiber.com
Email: mmeyers@singletonschreiber.com

Attorneys for Plaintiff, JAMES HUGHES, Individually, and on Behalf of the Class

Plaintiff JAMES HUGHES, Individually, and on Behalf of the Class, and as defined below, makes the following allegations against Defendant JACKSON NATIONAL LIFE INSURANCE COMPANY, a Michigan Corporation ("JNLIC" or "Defendant"), and DOES 1 through 10, Inclusive, as follows:

## I.    NATURE OF THE CASE

1.    Since January of 2013, JNLIC has wrongfully terminated hundreds of life insurance policies in violation of California law. The unlawful activity continues to this day. Plaintiff and the Class of Defendant's policy owners and vested beneficiaries are victims of JNLIC's ongoing unlawful practices.

2.    Since January 1, 2013, every life insurer doing business in California, before it can lawfully lapse or terminate a life insurance policy for nonpayment of premium, must strictly comply with the notice and grace period provisions found in California Insurance Code Sections 10113.71 and 10113.72 ("the Statutes"), as well as existing in California common law. There are no exceptions. The legal requirements of the Statutes are simple.

3.    First, every life insurance policy must "contain" and actually grant a 60-day grace period. This means a 60-day grace period must be actually written and contained in the terms of the contract of insurance provided to the policy owner. During this time, premiums received must be accepted without condition and the policy owner and the insurer may not declare the policy lapsed or terminated. Should the insured die during the grace period, the insurer must pay the policy benefits.

4.    Second, the Statutes mandate that no policy may lapse or be terminated until and unless, after a payment is due and is unpaid, the insurer mails a 30-day warning notice, not only to the policy owner, but also to any assignee, any person with interest in the policy, and a designee selected by the policy owner to receive such notice. The notice may only be mailed after the initial premium is due and is unpaid and must be an accurate description of the status of the policy.

5.    Next, every "applicant" for life insurance must be notified of its right to designate an individual to receive the 30-day notices provided by the Statutes prior to the issuance and delivery of the policy. This notice must then be provided annually to the policy owner. An

INDIVIDUAL AND CLASS ACTION COMPLAINT; AND DEMAND FOR JURY TRIAL

"applicant" for life insurance means any form of applicant, including "applicants" for reinstatement, conversion, or any modification or change or in the contract.

6.      Finally, under the terms of the Statutes, no insurer may lapse or terminate a life insurance policy for nonpayment without first strictly complying with all these provisions. Failure to comply with all these notice provisions voids any attempted termination or lapse as a matter of law until and unless there has been compliance. None of these requirements are satisfied by substantial performance, nor are they excused by the conduct of the policy owner or the alleged subjective intent of the policy owner. These are mandates and, absent compliance with each and every provision, no lawful termination of a life insurance policy occurs until and unless the provisions are fully and strictly satisfied.

7.      Since January 1, 2013, JNLIC has systematically and purposely failed to provide full 60-day grace periods, proper notices of pending lapse or termination, or inform applicants and policy owners of their right to designate a third party to receive notices of lapse. Further, in evaluating terminations arising from nonpayment of premium after January 1, 2013, JNLIC has failed to apply these rules and undertook no evaluation of its own compliance. This specific failure to comply is universal and implicates policies issued before the date of the Statutes' enactment (January 1, 2013).

8.      JNLIC has also intentionally concealed from its policy owners and beneficiaries and other persons and entities with interest in its life insurance products, the existence of these mandatory rules and procedures and the rights they guarantee – rights about which JNLIC would rather its customers and claimants not know. This concealment, scheme, and plan by JNLIC is intentional, as is JNLIC's complete disregard for the statutory mandates of California.

9.      Moreover, since January 1, 2013, JNLIC has become aware of its failures and has failed to take the appropriate corrective action. Instead, JNLIC appears to have doubled down and made the decision to ignore the law, ignore court rulings, and deal with the occasional complaint without regard to its obligation to apply these rules properly and completely to all of its varied life insurance products utilized in this state.

10.      JNLIC's continued disregard for the law is widespread. Indeed, hundreds of policy

INDIVIDUAL AND CLASS ACTION COMPLAINT; AND DEMAND FOR JURY TRIAL

1    owners have lost and continue to lose the benefit, value, and security of their life insurance; have

2    been and continue to be forced into unnecessary reinstatements; and in many instances have lost

3    all reasonable access to any insurance at all. Ultimately, JNLIC has robbed hundreds of its

4    beneficiaries, like Plaintiff, of policy benefits and hundreds of insureds of the ability to have life

5    insurance protection.

6          11.    The injury to JNLIC's customers and vested beneficiaries continues today, with

7    policy owners currently paying unnecessary or inflated premiums or unknowingly suffering from

8    improper, forced "reinstatements" which diminish the value of the policies. JNLIC has told

9    numerous policy owners that they have no insurance, although their policies, unbeknownst to the

10    policy owners, are still in force. All share the same harm and injury – an unlawfully terminated

11    policy. Today these people, their heirs, beneficiaries, and others with interest likely believe that the

12    defaulting party to these policies is the policy owner, when, in fact, the only party in default and

13    the only party which disavowed and repudiated the policy was JNLIC. Beneficiaries who do make

14    claims are having these claims denied on the false assertion that the policy was terminated when,

15    in fact, benefits are owed. Most actual vested beneficiaries do not even know that they have rights

16    under a policy illegally terminated, which still requires payment of the benefits.

17          12.    The mandates of California law and the California Insurance Code were established

18    to protect all Californians and others, primarily seniors and the ill, and apply regardless of the date

19    of the policy's issuance. *McHugh v. Protective Life Ins. Co.* (2021) 12 Cal.5th 213.[1]

20          13.    JNLIC's conduct and failure to comply with the Statutes is intended to take

21    advantage of the people for whose benefit the Statutes were passed. JNLIC intentionally increased

22    the likelihood of forfeitures, which allowed JNLIC to gain financially at the expense of its

23    customers.

24

25    [1] The Ninth Circuit upheld a decision by a district court concluding that failure to strictly comply with the provisions of Insurance Code Sections 10113.71 and 10113.72 does not legally terminate a life insurance policy purportedly in default, and, that if a death of an insured occurs, policy

26    benefits are owed. *Thomas v. State Farm Life Ins. Co.,* No. 20-55231, 2021 U.S. App. LEXIS 30035 (9th Cir. Oct. 6, 2021); *see also, Bentley v. United of Omaha Life Ins. Co.,* No. 2:15-cv-

27    07870-DMG(AJWx), 2018 U.S. Dist. LEXIS 117107 (C.D. Cal. May 1, 2018); *Moriarty v. Am. Gen. Life Ins. Co.*, No. 3:17-cv-1709-JO-WVG, 2023 U.S. Dist. LEXIS 141961, at *11 (S.D. Cal.

28    Aug. 14, 2023) (holding that failure to comply with the Statutes means a policy cannot lapse.)

INDIVIDUAL AND CLASS ACTION COMPLAINT; AND DEMAND FOR JURY TRIAL

14.     Plaintiff is a victim of JNLIC's past and continual failure to appreciate the importance and mandates of the Statutes and to disclose those mandates to its policy owners. In or around August of 2022, JNLIC wrongfully terminated Plaintiff's policy without providing all of the Statutes' protections.

15.     In sum, Plaintiff suffered the common single harm suffered by all of the Class members – the wrongful and continued repudiation of valuable life insurance policies or denial of death benefits as vested beneficiaries. Plaintiff's experience is not unique and is suffered by the Class as a whole.

16.     Plaintiff brings this action to recover for the injuries and damages and/or for the Court to fashion appropriate remedies necessary and resulting from these violations, not only for Plaintiff's benefit, but also on behalf of the numerous California policy owners and beneficiaries who have also been denied and continue to be denied the benefits of California law. Plaintiff also requests injunctive relief intended to ensure JNLIC's future compliance with these important consumer safeguards and to prevent ongoing violations of these important Statutes.

## II.     PARTIES

17.     Plaintiff JAMES HUGHES, Individually, and on Behalf of the Class, is the owner of the subject policy. Plaintiff is and has been a resident and citizen of Riverside County, California, at all times relevant. Plaintiff pursues these claims and causes of action individually, on Plaintiff's own behalf as the owner of the subject policy, and on behalf of the Class as described herein.

18.     Defendant JACKSON NATIONAL LIFE INSURANCE COMPANY ("JNLIC" or "Defendant") is a Michigan corporation engaged in business involving the sale and administration of life insurance throughout the United States and other territories. JNLIC is licensed to conduct business and does business throughout California. JNLIC is a licensed/chartered life insurance carrier in California and is subject to regulation by California authorities.

19.     Defendants DOES 1 through 10, Inclusive, are various forms of insurance companies, agents, brokers, or other entities engaged in and operating in conjunction with JNLIC in a manner and fashion unknown to Plaintiff at this time so as to cause and/or contribute to the

injuries and allegations herein described.

20.     Plaintiff is informed and believes, and on that basis alleges, that now and at all times relevant, each Defendant was and is the agent, employee, employer, servant, representative, partner and/or co-venturer of each of the other Defendants, and was acting and is acting within the scope of such authority and relationship and with the knowledge, approval, consent, and ratification of the other Defendants, as applicable, in each of the transactions, events, or other matters herein described.

### III.    JURISDICTION

21.     This is a civil matter of which the courts of California have jurisdiction. This action arose in the state of California and exclusively involves application of laws of the state of California, as well as life insurance policies issued or delivered in California.

22.     Plaintiff is informed and believes that the controversy at issue solely involves a dispute confined to the state of California, its laws, and the ultimate jurisdiction of the courts of California.

23.     Plaintiff is informed and believes that all injuries and damages arose primarily in the state of California and all related conduct of the Defendant occurred solely within the state of California.

24.     JNLIC is authorized to conduct business in this state and has intentionally availed itself of the laws and markets within this state and does substantial business in this state. The business and activities, which are the subject of this litigation, are being conducted throughout the state in each and every county on a uniform and consistent basis. Plaintiff is informed and believes that JNLIC treats all policy owners, beneficiaries, agents, producers, or others living or located in California as being regulated and governed by the same uniform statewide policies and procedures. JNLIC's business within this state is substantial and consists of the marketing, sale, delivery, maintenance, and administration of thousands of life insurance policies, representing billions of dollars in benefits, as well as the maintenance of dozens of sales and agent offices.

25.     JNLIC advertises throughout California, including throughout this county, and conducts significant sales and related business activities in California and in this county, in

INDIVIDUAL AND CLASS ACTION COMPLAINT; AND DEMAND FOR JURY TRIAL

general, as well as specifically regarding the marketing, sale, and administration of life insurance policies. More than 10% of annual premiums received by JNLIC emanate from California where JNLIC lapses more than 2,500 policies a year for nonpayment of premium.

26.    Plaintiff is informed and believes that JNLIC, consistent with industry standards for insurance companies doing business in numerous jurisdictions, utilizes the addresses of policy owners as a determining factor of what law to apply to the administration of the policy. As such, JNLIC treats policy owners residing in California as requiring application of California law and JNLIC, furthermore, acknowledges its capacity to be sued in California counties in which it conducts business. JNLIC has developed and continues to develop and apply not only marketing strategies, but administration strategies, specifically, in relation to actual or potential policy owners residing in California. JNLIC's wrongful conduct has occurred in this County and throughout the state of California. Since 2013, the wrongful conduct alleged throughout this Complaint has occurred within California.

**IV.    THE ENACTMENT AND APPLICABILITY OF INSURANCE CODE SECTIONS 10113.71 AND 10113.72**

27.    In 2012, after extensive and open hearings and public consideration, including with Defendant and all other major insurance companies doing business in California, the California Legislature enacted Insurance Code Sections 10113.71 and 10113.72 (hereinafter the "Statutes"), which instituted procedural requirements for the termination and lapse of life insurance policies. The Statutes were written to avoid unintended forfeiture of life insurance policies primarily being suffered by the elderly and the ill. The Legislature found there was a significant problem in California with the elderly abruptly losing insurance because they happened to miss a premium payment, despite having faithfully and timely paid for many years. But the Statutes were nonetheless also designed to apply to all forms of life insurance, and required notices made through the provisions of the United States' postal service rules and regulations for "first class mail" and that the Statutes be utilized in compliance with all related provisions of the California Insurance Code and state regulatory provisions.

28.    Sections 10113.71 and 10113.72, in addition to other statutory provisions and laws

1    in effect as of January 1, 2013, mandate that every life insurance policy in or governed by

2    California law, including policies that have issued, been delivered, renewed, reinstated, converted

3    or otherwise become subject to the jurisdiction of California, shall contain a 60-day grace period

4    and that the policy shall remain in force during the grace period. Cal. Ins. Code § 10113.71(a).

5        29.    The provisions further require that, before any life insurance policy governed by

6    California law is lapsed or terminated for nonpayment of premium, a 30-day written notice by first

7    class mail of pending lapse or termination must be mailed, not only to the policy owner, but also to

8    any additional person who has been designated to receive such notice, by first class mail, as well

9    as to any person having any interest in the policy. Cal. Ins. Code § 10113.71(b)(1); and *see* §

10   10113.72(c) (dealing with designee notification).

11       30.    The provisions also mandate that the insurer, on an annual basis, as well as during

12   any application process, notify, by first class mail, the policy owner of an "individual policy" of

13   his or her right to change and/or designate additional notice recipients. This again is an obligation

14   owed on any policy within the jurisdiction of California.

15       31.    Finally, the Statutes mandate that no lapse or termination is effective unless every

16   one of the applicable provisions is strictly complied with. The Statutes codified existing California

17   law on strict compliance with forfeiture provisions.

18       32.    The provisions are applicable individually and severally to all life insurance

19   policies governed by California law.

20       33.    More specifically, Section 10113.71 originally reads as follows:

21           **§ 10113.71 Grace Period; Notice of pending lapse and
             termination of policy; Mailing requirement**

22

23           (a) Each life insurance policy issued or delivered in this state shall
             contain a provision for a grace period of not less than 60 days from
24           the premium due date. The 60-day grace period shall not run
             concurrently with the period of paid coverage. The provision shall
25           provide that the policy shall remain in force during the grace period.

26           (b) (1) A notice of pending lapse and termination of a life insurance
             policy shall not be effective unless mailed by the insurer to the
27           named policy owner, a designee named pursuant to Section
             10113.72 for an individual life insurance policy, and a known
             assignee or other person having an interest in the individual life
28           insurance policy, at least 30 days prior to the effective date of

9

INDIVIDUAL AND CLASS ACTION COMPLAINT; AND DEMAND FOR JURY TRIAL

termination if termination is for nonpayment of premium.

(2) This subdivision shall not apply to nonrenewal.

(3) Notice shall be given to the policy owner and to the designee by first-class United States mail within 30 days after a premium is due and unpaid. However, notices made to assignees pursuant to this section may be done electronically with the consent of the assignee.

(c) For purposes of this section, a life insurance policy includes, but is not limited to, an individual life insurance policy and a group life insurance policy, except where otherwise provided.

Next, Section 10113.72 states:

**§ 10113.72 Right to designate person to receive notice of lapse or termination of policy for nonpayment of premium; Right to change designation; Notice of lapse or termination**

(a) An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

(b) The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do so.

(c) No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination. Notice shall be given by first-class United States mail within 30 days after a premium is due and unpaid.

34.    These provisions were intended to standardize the procedures and notices used by life insurers to terminate policies arising from any form of nonpayment and forfeiture of coverage arising from nonpayment of premium. The Statutes further codified longstanding California law and policy regarding the state's desire to protect policy owners and beneficiaries from loss of insurance resulting from the failure, *e.g.*, to pay premium after years of timely payments.

## V.    JNLIC'S VIOLATIONS OF LAW

35.    In 2012, Defendant was made fully aware of the drafting and enactment of these provisions. And through its own lobbying groups and regulatory advisors, Defendant understood how and in what fashion the Statutes would apply. Prior to enactment, Defendant made no attempt to object to the enactment of the Statutes, which are the subject of this litigation.

36.    Despite early knowledge of the Statutes and their mandates, since January 1, 2013, Defendant has failed to fully comply with the Statutes. JNLIC has treated policies differently based on their date of issuance and the type of the policy.

37.    Specifically, JNLIC has not strictly complied with the Statutes regarding individual policies issued or delivered in the state of California prior to January 1, 2013.

38.    JNLIC has failed to provide full 60-day grace periods contained in the policy by either not actually attaching or making the grace period a physical part of the policy, improperly advising policy owners and/or claimants of the wrong grace period, not accepting premiums without conditions during the grace period or inaccurately declaring a policy terminated prior to the expiration of the grace period, which amounts to a repudiation of the policy.

39.    JNLIC has failed to mail accurate timely 30-day pending lapse notices to the policy owner and/or designee either by inaccurately describing the actual grace period, by failing to mail to those recipients the notices required by law and/or by providing insufficient time periods as required by law.

40.    JNLIC has failed to provide annual notifications of their rights to designate to policy owners entitled to such notices.

41.    JNLIC has failed to apply the mandates of the Statutes as an absolute condition for termination of any policy for nonpayment of premium and instead excuses noncompliance based on the inaccurate perceived fault of the policy owner or other irrelevant grounds or justification.

42.    JNLIC has treated policy owners directly and indirectly as if they are in default for payment of premiums when, in fact, in every instance, JNLIC first violated the terms of the policy and/or Statutes prior to any actual default by any policy owner.

43.    JNLIC has imposed new conditions on terminated policies, including the demand

INDIVIDUAL AND CLASS ACTION COMPLAINT; AND DEMAND FOR JURY TRIAL

1   for repayment of unearned premiums, as well as ignored the consequences of noncompliance with

2   the Statutes.

3          44.    JNLIC has been aware, since 2013, that all of its policies administered in the state

4   of California and in force after January 1, 2013, were to be administered consistent with these

5   provisions. However, JNLIC has acted in contravention and violation of various Insurance Code

6   provisions, other than the Statutes, including regulatory mandates and the implied covenant of

7   good faith and fair dealing implied in every insurance contract in California.

8          45.    In August of 2021, JNLIC learned that the California Supreme Court had confirmed

9   that the Statutes applied to all in-force life insurance policies in the state as of or after January 1,

10  2013, including, Plaintiff's policy, but has yet to acknowledge this fact and inform its insureds and

11  still refuses to comply with the law after August of 2021.

12         46.    Finally, Plaintiff is informed and believes JNLIC has failed to institute appropriate

13  training and education of sales and underwriting staff, as well as claims personnel and others

14  whose knowledge of these rules is essential for JNLIC's operation. Plaintiff is informed and

15  believes that additional violations of the Statutes have also occurred, which will be disclosed

16  during this litigation.

17         **VI.    MR. HUGHES' POLICY, TERMINATION, AND DENIAL OF CLAIM**

18         47.    Plaintiff's experience with JNLIC is representative of JNLIC's ongoing course of

19  misconduct and noncompliance.

20         48.    In or around 1999, Plaintiff ("Mr. Hughes"), purchased, from or in California, a

21  universal life insurance policy (the "Policy" or "Subject Policy") from JNLIC. The policy number

22  on the Subject Policy is U79778. As of the date of filing, Plaintiff does not have a full copy of

23  Plaintiff's Policy contract which JNLIC refuses to release or produce. JNLIC maintains custody,

24  possession, and control of the entire Policy file, which will be produced by JNLIC in this

25  litigation. Mr. Hughes has requested a copy of Plaintiff's Policy from JNLIC on multiple

26  occasions, but to date none has been provided. Plaintiff is informed and believes that the Policy is

27  a Universal Life (flexible premium) Policy.

28         49.    Plaintiff is informed and believes that JNLIC currently has possession of all

portions of records or documents related to Plaintiff's Policy required to be maintained and available pursuant to the provisions of California Insurance Code Section 10508. JNLIC is under a continuing duty of care to maintain such records, as well as their availability, not only by the California Department of Insurance but also consistent with Defendant's contractual obligations, express and implied, owed to Plaintiff, as well as persons with interest in the policy, and actual or potential beneficiaries.

50.     The Policy was purchased in California, was issued and delivered in California, and premiums were all paid from California, such that it was and continues to be governed by the laws of the state of California, including, but not limited to, the Statutes. The value of the Policy is $500,000 or more and names Denise E. Hughes as the beneficiary of the Policy.

51.     Plaintiff stayed current on the Policy and faithfully paid monthly premiums for nearly 25 years and well beyond enactment of the Statutes by the California Legislature in 2013. Sometime in or around August of 2023, JNLIC terminated the Policy for nonpayment of premium.

52.     Around the time the Policy lapsed, it had a planned periodic premium of $635.25 due monthly. Each month, for at least 18 months, Mr. Hughes paid an amount above the planned periodic premium, and for the 6 months before the Policy was lapsed, paid $725 by check each month.

53.     In August or September of 2023, Mr. Hughes received a "PAYMENT NOTICE" from JNLIC, indicating a payment of $635.25 was due by September 24, 2023. Around the same time, Mr. Hughes received a notice from JNLIC dated August 28, 2023, informing him that the Subject Policy had lapsed for nonpayment. Mr. Hughes never received notice that the Policy was in danger of lapsing.

54.      In response, Mr. Hughes called JNLIC on August 29, 2023, and was informed by a customer service representative that the true cost of insurance was $757.37 per month, and that, because the payments made by Mr. Hughes were less than this amount, the Policy's cash value depleted and the Policy was terminated.

55.     Following the call to JNLIC, Mr. Hughes sent a check for $725 on September 20, 2023.

56.    Mr. Hughes was informed by JNLIC that he would have to apply for reinstatement. JNLIC sent Mr. Hughes a reinstatement application, which Mr. Hughes completed and mailed back. On December 18, 2023, JNLIC informed Mr. Hughes that it would not reinstate his Policy due his medical history and a "significant change" in his health since he first received the Policy 25 years earlier. JNLIC returned the payment made on September 20, 2023.

57.    Based on information and belief, as of the date of the purported lapse or termination of the Policy, JNLIC had violated every single provision of the Statutes.

58.    Initially, prior to discovery and investigation, it appears JNLIC violated Cal. Ins. Code Section 10113.72(b) by not annually notifying Mr. Hughes of a right to designate a third party to receive notices of pending lapse.

59.    JNLIC also terminated the Policy without compliance with the provisions of Cal. Ins. Code Section 10113.71(a), which mandated a 60-day grace period. There is no indication, based on the documentation in Mr. Hughes' possession, that Mr. Hughes ever received a 60-day grace period provision in his Policy or in practice. Plaintiff is unaware what contractual grace period the Policy contains, as JNLIC has refused to provide a copy of the Policy.

60.    JNLIC also failed to provide notices, as required by Cal. Ins. Code Sections 10113.71(b)(1) and (3). Plaintiff is informed and believes that JNLIC did not send any notice of pending lapse to him, and did not send one to anyone else with interest in the Policy.

61.    No compliant notice was sent to the Policy owner and no notice was sent to the designee, due to JNLIC's failure to provide the right to designate during the years the Policy was in force after 2013. *See* Cal. Ins. Code Section 10113.72(b).

62.    Plaintiff is informed and believes that Defendant further failed to comply with the first class mailing requirements and properly respond to the utilization of that service.

63.    JNLIC then proceeded to violate Insurance Code Sections 10113.71 and 10113.72, when claiming that the Policy had lapsed or terminated. In fact, however, under the provisions of Sections 10113.71(b)(1) and 10113.72(b), no legal termination had occurred. JNLIC never complied with the strict compliance aspects of the Statutes in any respect. Thus, as of this date, the Policy in fact remains in full force and effect.

64.     As of August 2021, Defendant compounded its violations of the Statutes by failing to comply with the Statutes and its ongoing duty of good faith and fair dealing not only as to the Subject Policy but as to other Class policy owners and vested beneficiaries.

65.     JNLIC's violations occurred prior to the Policy even reaching the end of the statutory and contractual grace period. Mr. Hughes had done nothing contrary to the terms of the Policy, but was being dealt with as the party in default.

66.     Plaintiff is further informed and believes that, irrespective of the application of the provisions of Sections 10113.71 and 10113.72, JNLIC systematically failed to comply with the express terms of Policy, which promised a default notice prior to terminating the Policy at the end of the grace period.

67.     Further, JNLIC misled Plaintiff by sending a "Payment Notice" after the Policy had purportedly terminated.

68.     Each of Defendant's violations was a material violation of law and a material breach and repudiation of the Policy, thereby excusing any further performance by Mr. Hughes of tendering premiums to maintain the Policy in force or imposing any requirements or conditions. JNLIC was in contractual breach and remained in breach of the Policy at all times from at least January 1, 2013, until the date of this filing. As a result of each and every violation, there was harm and injury to Plaintiff.

## VII.    CLASS ACTION ALLEGATIONS

69.     Plaintiff is informed and believes that Defendant has not, since at least January 1, 2013, properly and fully complied with the provisions of California Insurance Code Sections 10113.71 and 10113.72. Since that time, Defendant has failed and continues to fail to provide these protections to policy owners and beneficiaries.

70.     Plaintiff brings this action on behalf of all members of the proposed Class, as follows:

**The Class:**
All owners, or beneficiaries upon a death of the insured, of Defendant's life insurance policies that were renewed, issued, or delivered by Defendant in California, and in force on January 1, 2013, and which underwent or will undergo lapse or termination for the nonpayment of

premium without Defendant first providing every notice, grace period, and offer of designation required by Insurance Code Sections 10113.71 and 10113.72.

**The Elder Abuse Sub-Class:**

All members of the Class defined above who are also 65 years of age or older.

71. **_Numerosity._** The members of the Class and Sub-class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class and Sub-class contain hundreds and perhaps thousands of members. The true number of members is known or ascertainable by the Defendant, as are their identities. Thus, Class and Sub-Class members may likely be notified of the pendency of this action by first class mail, electronic mail, and/or by published notice.

72. **_Existence and Predominance of Common Questions and Answers of Law and Fact._** There is a well-defined community of interest in the questions and answers of law and fact involved affecting Class and Sub-Class members. The questions and answers of law and fact common to the Class and Sub-Class predominate over questions and answers affecting only individual Class and Sub-Class members, including, but not limited to, the following:

    a.    Has Defendant violated and continued to violate the provisions of Sections 10113.71 and 10113.72?;

    b.    Is Defendant continuing to refuse to provide the protections afforded by the provisions of Sections 10113.71 and 10113.72?;

    c.    Whether Defendant's life insurance policies have been ineffectively lapsed, terminated, or subsequently unnecessarily modified through reinstatement?;

    d.    Should the Court invalidate improper lapses, terminations, and/or reinstatements of policies that resulted from Defendant's failure to comply with the Insurance Code?; and

    e.    Should Defendant be required to make payments to beneficiaries of policies where the insured has died, and the policy was lapsed or terminated in violation of Sections 10113.71 or 10113.72?

73. **_Typicality._** Plaintiff's claims are typical of the claims of the members of the Class

INDIVIDUAL AND CLASS ACTION COMPLAINT; AND DEMAND FOR JURY TRIAL

and Sub-Class and because Plaintiff and each member of the Class and Sub-Class were victims of the same statutory violations. Further, Plaintiff's claims are typical of the claims of Plaintiff's fellow Class and Sub-Class members, which all arise from the same operative facts involving the Defendant's unlawful violations of Sections 10113.71 and 10113.72.

74.    ***Adequacy of Representation.*** Plaintiff will fairly and adequately protect the interests of the Class and Sub-Class. Plaintiff has retained counsel highly experienced in handling class action litigation, including that which involves consumer protection from unfair insurance business practices, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no interest adverse or antagonistic to that of the Class and Sub-Class.

75.    ***Superiority***. A class action is a superior method for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Sub-Class members are relatively small compared to the burden and expense that would be expended by individual litigation of their claims against Defendant. It would thus be virtually impossible for Class and Sub-Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class and Sub-Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. The class action device provides the benefit of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances. Moreover, many Class and Sub-Class members remain unaware of their rights and, without this Class action, would remain unaware of their rights and benefits.

76.    In the alternative, the Class and Sub-Class may also be certified because:

a.    The prosecution of separate actions by individual Class and Sub-Class members would create a risk of inconsistent or varying adjudication with respect to individual Class and Sub-Class members that would establish incompatible standards of conduct for Defendant;

b.    The prosecution of separate actions by individual Class and Sub-Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and Sub-Class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests; and/or

c.    Defendant has acted or refused to act on grounds generally applicable to the Class and Sub-Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class and Sub-Class as a whole.

77.    Unless the Class and Sub-Class are certified, Defendant will retain monies received because of its conduct taken against the Class and Sub-Class members and Plaintiff. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and members of the Class and Sub-Class will continue to be harmed.

78.    Plaintiff knows of no difficulty likely to be encountered in the management of this litigation that would preclude its maintenance as a class action. Because the action is brought as a class action, the Court need only apply a single set of California laws as they relate to Defendant's violation of Sections 10113.71 and 10113.72.

79.    Plaintiff has incurred, and will incur, expenses for attorney's fees and costs in bringing this action. These attorney's fees and costs are necessary for the prosecution of this action and will result in a benefit to each of the members of the Class and Sub-Class.

**VIII.    FIRST CAUSE OF ACTION**
**FOR DECLARATORY JUDGMENT OR RELIEF (CAL CIV. CODE § 1060, *ET SEQ.*)**
**(By Plaintiff, Individually, and on Behalf of the Class)**

80.    Plaintiff incorporates by reference each and every allegation contained above.

81.    Plaintiff, in his individual capacity, as well as in his representative capacity, brings this action individually and on behalf of all members of the Class.

82.    Under California law, "[a]ny person interested under a written instrument… or under a contract, or who desires a declaration of his or her rights or duties with respect to

another… may, in cases of an actual controversy relating to the legal rights and duties of the respective parties," maintain a complaint or cross-complaint "for a declaration of his or her rights and duties." Furthermore, he or she "may ask for a declaration of rights or duties, either alone, or with other relief, and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time." Civ. Code § 1060.

### A.    Basis for Relief

83.    On January 1, 2013, the California Insurance Code was amended by Sections 10113.71 and 10113.72. The provisions of these Statutes were immediately and thereafter read into all in-force policies, regardless of the date of issuance. The provisions were further intended to require compliance by all life insurance policies – including, but not limited to, both group and individual – that came within the jurisdiction of California, including, but not limited to, policies that renewed or somehow continued in force on or after January 1, 2013.

84.    These Statutes and amendments to the California Insurance Code were intended to and do regulate the lapse and termination procedures arising from nonpayment of premiums which may occur from the date of enactment and thereafter.

85.    The amendments were not intended to relieve or waive a policy owner's continuing obligation to pay premiums, but operated to keep the policy in force until the policy was properly lapsed or terminated consistent with the statutory provisions which were incorporated into the terms of the policy by law. Each of these statutory requirements was intended to stand alone.

86.    Forfeiture provisions for nonpayment of premium for life insurance policies are strictly construed against lapse or termination and California law disfavors forfeiture of insurance. Forfeitures "are often the means of great oppression and injustice" and "the courts should be liberal in construing the transaction in favor of avoiding a forfeiture." *Ins. Co. v. Norton*, 96 U.S. 234, 242 (1978). "Forfeiture of a policy will be avoided on any reasonable showing." *Klotz v. Old Line Life Ins. Co. of Amer.,* 955 F.Supp. 1183, 1188 (N.D. Cal. 1996).

### B.    There is an Actual Controversy Requiring a Declaration of Rights and Duties

87.    An actual controversy has arisen and now exists between Plaintiff and Defendant concerning their respective rights and duties under the California Insurance Code and the Policy.

1   Plaintiff contends that Sections 10113.71 and 10113.72 apply to the Subject Policy, as well as to

2   all of Defendant's individual and group California life insurance policies in force as of or after

3   January 1, 2013, including any policies that were renewed in California on or after January 1,

4   2013. Plaintiff also contends that these Statutes govern the manner and procedure in which life

5   insurance policies can legally be lapsed or terminated as of January 1, 2013, and thereafter.

6   Defendant contends that policies terminated without the protection of California Insurance Code

7   Sections 10113.71 and 10113.72 nevertheless remained terminated and that policy owners are not

8   entitled to the revival of their policies and that vested beneficiaries are not entitled to any death

9   benefits.

10      88.    Plaintiff contends that the violations of the Statutes, as described herein, all

11  invalidate and void any attempts to terminate the subject policies and/or act as a repudiation of

12  those policies.

13      89.    Plaintiff desires a judicial determination of rights and duties, and a declaration or

14  judgment that Sections 10113.71 and 10113.72 must be strictly complied with in order to terminate

15  a policy for nonpayment of premium.

16      90.    Plaintiff desires a judicial determination that Defendant's life insurance policies in

17  California must contain a 60-day grace period in the written contract.

18      91.    Plaintiff desires a judicial determination that Defendant's failure to annually

19  provide notice of a right to designate a third party to receive notices of pending lapse under

20  Section 10113.72 renders a policy termination ineffective, leaving the policy in force.

21      92.    Plaintiff desires a judicial determination that Defendant is not entitled to premium

22  payments for periods of time where Defendant declared a policy terminated in violation of

23  Sections 10113.71 and 10113.72.

24      93.    Plaintiff desires a judicial determination that the Subject Policy and Class policies

25  were not properly terminated in conformance with Sections 10113.71 and 10113.72.

26      94.    A judicial declaration would advise insureds and their beneficiaries of their rights

27  and would advise Defendant of its duties to Plaintiff and to Class members concerning policy

28  owners' rights to designate individuals to receive notices of pending lapse and termination and the

1  right to receive notice of, and the ability to properly utilize, the legally required grace period. A

2  judicial declaration is also necessary to determine the validity of any unnecessary reinstatements

3  obtained, to determine whether policies were legally in force at the times of deaths of insureds, and

4  to determine whether beneficiaries were wrongfully denied payment of benefits under their

5  policies.

6                          **IX.    SECOND CAUSE OF ACTION**
                              **BREACH OF CONTRACT**
7                  **(By Plaintiff, Individually, and on Behalf of the Class)**

8         95.     Plaintiff incorporates by reference each and every allegation contained above.

9         96.     Plaintiff brings this claim individually and also on behalf of all members of the

10  Class, as necessary.

11        97.     Defendant breached and continues to breach the express terms of its life insurance

12  policies, including Plaintiff's Policy, as well as the statutory mandates regarding such policies, by,

13  amongst other things:

14                a.    Failing to include in such policies and/or failing to provide a 60-day grace

15                      period for purposes of payment of premiums and lapse and termination of

16                      coverage for nonpayment of premium;

17                b.    Lapsing and/or terminating policies before expiration of the 60-day grace

18                      period;

19                c.    Failing to include in such policies and failing to provide accurate 30-day

20                      written notice of pending lapse or termination;

21                d.    Failing, where applicable, to provide proper notice to policy owners on an

22                      annual basis of the policy owners' right to designate individuals to receive

23                      notices of pending lapse or termination;

24                e.    Lapsing or terminating policies without strictly complying with the terms of

25                      the policies;

26                f.    Refusing to pay benefits to beneficiaries, despite knowledge and

27                      information that Defendant had not strictly complied with the terms of the

28                      policies;

g.    Improperly requiring reinstatement of policies that had not lapsed or terminated and which were not required or were not subject to reinstatement;

h.    By failing to pay benefits or claims;

i.    By failing to provide the notices required by the policy; and

j.    By failing to apply the applicable law to the insurance contract by repudiating policies of insurance for nonpayment without strict compliance with the provisions of the Statutes.

98.    Under the terms of the Subject Policy and Class policies and consistent with laws of California, Defendant was required to mail the required notices, effectuate the change of the policies to include the proper grace period, and was required to notify policy owners of their right to designate every year as well as during any application. Plaintiff was entitled to be mailed written notice prior to the effectuation of any lapse or termination for nonpayment. Defendant sent no such notice and, thus, breached the insurance contract by failing to provide that notice.

99.    All of the aforementioned conduct, individually and collectively, constitutes material unexcused breaches of the Policy, as well as express material repudiations of the contract. To the extent any contractual obligations, duties, or conditions are imposed on policy owners or on beneficiaries, those obligations, duties, and conditions have been waived and/or have been excused due to Defendant's material breaches.

100.    Defendant's conduct caused injury upon the false, wrongful, and inadequate termination of coverage, and ultimately in refusing to pay the claim. Plaintiff and his fellow Class members suffered harm through the loss of coverage, the loss of peace of mind related to the existence of coverage, the capacity to utilize the years of investment in wrongfully-lapsed and terminated policies, and through the denial of claims.

101.    To the extent any policy owners and/or beneficiaries have failed to comply with any payment conditions or other conditions for the continuation of insurance, Defendant is estopped from asserting such conditions due to its conduct and material breaches.

102.    As a legal and proximate result of the conduct described herein, the Class has

1    suffered direct and foreseeable economic damages, including loss of policy benefits and/or the

2    value of the policy and allowed interest under the terms of the policies and the law, in a nature and

3    amount to be proven at the time of trial.

4                          **X.    THIRD CAUSE OF ACTION**
          **UNFAIR COMPETITION (BUS. AND PROF. CODE § 17200, *ET SEQ.*)**
5                    **(By Plaintiff, Individually, and on Behalf of the Class)**

6        103.    Plaintiff incorporates by reference each and every allegation contained above.

7        104.    Plaintiff brings this claim individually and also on behalf of all members of the

8    Class, as necessary.

9        105.    California Business and Professions Code Sections 17200, *et seq*., ("UCL") prohibit

10   any unlawful, unfair, deceptive, or fraudulent business practice.

11       106.    Defendant committed "unlawful" acts under the UCL by violating and continuing

12   to violate Sections 10113.71 and 10113.72, including by failing to afford policy owners, including

13   Plaintiff, the requisite 60-day grace period and/or written 30-day notice prior to any lapse or

14   termination, and further, an annual right to designate someone else to also receive notices of

15   pending lapse or termination of coverage.

16       107.    The Subject Policy, and the Class policies, remain in force and benefits are payable

17   upon the death of the insured. Because of JNLIC's violations of the California Insurance Code,

18   JNLIC's attempted terminations or lapses of policies were illegal and ineffective. The Class

19   policies, in other words, remain in force and subject to payment of benefits. JNLIC's failure to

20   comply with the statutory terms has not effectively terminated any policy, and Class members all

21   remain in ongoing valid contractual relationships with JNLIC.

22       108.    JNLIC's unlawful practices also included and continue to include Defendant's

23   ongoing concealment of the rights afforded to policy owners under Sections 10113.71 and

24   10113.72. Defendant continues to conceal and mislead the policy owners and beneficiaries of the

25   existence of a right to a 30-day lapse notice, a right to a 60-day grace period, a right to an annual

26   designation, as well as the provisions of these Statutes that mandate strict compliance before any

27   effective lapse or termination occurs.

28       109.    Moreover, JNLIC has committed deceptive acts under the UCL by affirmatively

and erroneously telling Class members that their policies had grace periods of less than 60 days
and/or that their policies lapsed or terminated. The truth is that the policies had grace periods of at
least 60 days and the policies had *not* actually lapsed or terminated.

110.   The unlawful and unfair business practices described above have proximately
caused harm and injuries to Plaintiff, the Class, and to the general public in the form of lost money
or property. The money lost by the Class includes the policy benefits that JNLIC is withholding, as
well as the premiums it wrongfully collected.

111.   Pursuant to California's UCL, Plaintiff, the general public, and the members of the
Class are entitled to revival of their policies Defendant illegally terminated by means of such
business practices. Examples of this lost money acquired illegally by Defendants include
unrefunded premiums, withheld benefits, and diminution of value of policies.

112.   Defendant continues to this day to ignore or otherwise violate the Statutes and
continues to ignore or repudiate otherwise valid and in-force life insurance policies that should be
in effect today. Defendant continues to rob owners and beneficiaries of their lawfully-owned
policies and benefits. As such, and pursuant to California's UCL, Plaintiff and the members of the
Class and the general public are also entitled to injunctive relief, including public injunctive relief,
against Defendant's ongoing business practices.

113.   If Defendant is not enjoined from engaging in the unlawful business practices
described above, Plaintiff, the Class, and the general public will be irreparably injured.

114.   Plaintiff, the general public, and the members of the Class have no plain, speedy,
and adequate remedy at law.

115.   Defendant, if not enjoined by this Court, will continue to engage in the unlawful
business practices described above, in violation of the UCL, in derogation of the rights of Plaintiff,
the Class, and the general public.

116.   Plaintiff's success in this action will result in the enforcement of important rights
affecting the public interest by conferring a significant benefit upon the general public.

117.   Private enforcement of these rights is necessary, as no public agency has pursued
enforcement and the interests Plaintiff seeks to protect are for the benefit of the general public.

INDIVIDUAL AND CLASS ACTION COMPLAINT; AND DEMAND FOR JURY TRIAL

1    Plaintiff is therefore entitled to an award of attorney's fees and costs of suit pursuant to, among

2    others, California's UCL, the Common Fund Doctrine, the Public Benefit Doctrine, and California

3    Code of Civil Procedure Section 1021.5.

4    **XI.    FOURTH CAUSE OF ACTION**
     **FINANCIAL ELDER ABUSE (CAL. WELF. & INST. CODE § 15610.30)**
5    **(By Plaintiff, Individually, and on Behalf of the Elder Abuse Sub-Class)**

6    118.    Plaintiff incorporates by reference each and every allegation contained above, as

7    well as the allegations contained in Plaintiff's individual cause of action for Bad Faith below,

8    paragraphs 128 – 146, which describe conduct consistent with conduct directed to the following

9    Sub-class on and after August 31, 2021.

10   119.    Plaintiff brings this claim in his individual capacity and also on behalf of all

11   members of the elder abuse Sub-class.

12   120.    By way of its actions described above, JNLIC has taken, hidden, appropriated,

13   obtained, or retained Plaintiff and his fellow Sub-class members' money or property and/or assisted

14   in the taking, hiding, appropriating, obtaining, or retaining of said money or property—namely, the

15   life insurance policies which JNLIC improperly terminated as well as the benefits associated with

16   those policies and which JNLIC has withheld and continues to withhold to this day. This conduct is

17   and remains in bad faith and undertaken with an appreciation and knowledge of its wrongfulness.

18   121.    Plaintiff and Plaintiff's fellow Sub-class members were 65 or older at all relevant

19   times, including at the time Defendant was on direct notice (i.e., August 31, 2021 when the

20   *McHugh* decision was published) that any prior purported lapse and/or terminations of policies

21   arising from nonpayment of premium at any time from January 1, 2013, until the present, which did

22   not strictly comply with the Statutes did not legally effectuate any lapse or termination and that the

23   policies would remain in force until and unless such compliance occurred.

24   122.    JNLIC took, hid, appropriated, obtained, or retained this money or property for a

25   wrongful use or with the intent to defraud Plaintiff and Plaintiff's fellow Sub-class members.

26   123.    JNLIC knew or should have known that its conduct was likely to be harmful to

27   Plaintiff and Plaintiff's fellow Sub-class members.

28   124.    JNLIC now knows, and has known since August 31, 2021, that its past conduct was

likely to have caused and continue to cause harm and that the prior purported terminations of policies was legally ineffective.

125.    As a direct result of JNLIC's actions, Plaintiff and Plaintiff's fellow Sub-class members were harmed in an amount to be determined at trial. JNLIC's conduct was a substantial factor in causing that harm.

126.    Plaintiff and all other members of the elder abuse Sub-class seek compensatory damages and all other remedies otherwise provided by law in an amount to be proven at trial, as well as reasonable attorneys' fees and costs under California Welfare and Institutions Code Section 15657.5.

127.    Furthermore, JNLIC, in committing the acts described above, is guilty of recklessness, oppression, fraud, or malice in the commission of the financial abuse thereby entitling Plaintiff and the Sub-class to an award of punitive damages.

**XII.    FIFTH CAUSE OF ACTION**
**BAD FAITH**
**(By Plaintiff, Individually)**

127.    Plaintiff incorporates by reference each allegation contained above.

128.    At all relevant times, Plaintiff was the policy owner of the Policy, was entitled to the protections of the Statutes, and was entitled to the benefit of the implied covenant of good faith and fair dealing.

129.    At all relevant times, Defendant owed Plaintiff an obligation to perform the express an implied obligations imposed by the Policy, to act in good faith, to deal fairly with Plaintiff and to not interfere with Plaintiff's rights to receive the benefits of the Policy. These duties included not only the duty to pay the Policy benefits to the named beneficiary upon the death of the insured, but also Defendant's ongoing promise to accept and receive premiums and maintain the coverage at the premium amounts scheduled, as well as to continue to offer other benefits contained in the Policy, including the ability to borrow and increase the amount of coverage, amongst other items. These obligations included, but were not limited, to being honest with Plaintiff and to refrain from concealing material information and always to strictly comply with the provisions of California law arising from Defendant's specific duties imposed and arising from the privilege of conducting

business in the state of California.

130.    At all times, relevant herein, including during the pendency of this action, Defendant had an obligation to be honest, fair, and impartial in the consideration of Plaintiff's claims, as well as to refrain from asserting its interests over those of Plaintiff's. These obligations included performing fair and complete investigations, and thoroughly investigating and considering any perceived or actual legal or factual disputes. These obligations included maintaining required documentation and evidence concerning the subject insurance and, where reasonable, to advise and fully disclose to policy owners, beneficiaries, or others with legitimate interests in the insurance, all material facts and information.

131.    These duties also prevent Defendant from asserting bases for termination of coverage which do not exist in the law or in the express terms of the Policy and prevent Defendant from treating policy owners and/or beneficiaries in an unreasonable, adversarial fashion.

132.    The obligations and duties described herein and described before have existed from the inception of the Policy and continue through the pendency of this action. By its conduct described above, Defendant has materially breached the terms and conditions of the Policy and the statutory mandates of California law by engaging in the acts described herein, by failing to comply with the laws of this state and, ultimately, by improperly asserting the lapse and purported termination of the Policy.

133.    Based on these facts, and other facts that will be developed in this litigation, Defendant, at all relevant times and to date, based on these acts and the common scheme and plan discussed here, has breached the covenant of good faith and fair dealing owed to Plaintiff by failing to comply with the terms of the Policy, by asserting provision and requirements which do not exist, by misrepresenting the facts concerning the law, by failing to completely investigate its attempts to terminate the Policy, by failing to abide by the Policy and the Statutes, by placing Defendant's interests above those of their policy owners, by unreasonably asserting Policy provisions without considering the actual facts and the law, by misrepresenting Policy terms and conditions, by misrepresenting and applying the law, and by, amongst other things, failing to comply with proper industry standards and customs regarding lapse or termination of life

insurance policies.

134.    Plaintiff also alleges that the great preponderance of evidence supports the conclusion that Defendant's violations and refusal to comply with the provisions of Ins. Code Sections 10113.71 and 10113.72 were a clear, proximate cause of the improper termination of the Policy.

135.    At the time the Policy lapsed, Mr. Hughes was financially capable of making any premium payments required to keep the Policy in force and had no cause or reason to cease making premium payments on the Policy. In fact, there is not now, nor has there ever been, any evidence that Mr. Hughes did not want and desire to maintain this investment. But for Defendant's multiple, consistent failures to follow the law from 2013 through the improper termination of the Policy, this action would not have been necessary. While not a requirement or condition of the law or Policy to explain the basis or motivation for the nonpayment of premium, Plaintiff can and will demonstrate that the injuries and damages suffered because of the violation of Defendant's bad faith, fraud, and abuse, were a direct result of Defendant's misconduct and violation of the Statutes. And Plaintiff will contend that this was and remains common treatment by Defendant directed at its policy owners and beneficiaries.

136.    One element of Plaintiff's claim for bad faith is the fraud and concealment undertaken by Defendants during the entirety of the parties' relationship, during which Defendant misrepresented and concealed from Mr. Hughes material facts and information crucial to maintenance of the Policy.

137.    As further described herein, Defendant knew, or should have known, prior to January 1, 2013, that California law (1) mandated that 60-day grace periods applied to all policies in force as of January 1, 2013 and thereafter, regardless of whether the policy was issued or delivered prior to January 1, 2013; (2) that no lapse or termination was effective unless preceded by timely and proper notices of pending lapse or termination; (3) that notices must be sent not only to the policy owner, but also to designees, known assignees, or other persons having an interest in the individual life insurance policy; (4) that all policy owners must be annually provided notice of a right to designate said notice recipients; and (5) that failure to comply with these provisions

leaves a policy in force, mandating payment of benefits upon the insured's death. Defendant knew
or should have also known there was no official or proper public DOI opinion or guidance that
should have been relied upon. Defendant knew, by 2021 if not earlier, that the Statutes did apply to
the Policy.

138.    Despite knowledge of the applicability of these provisions to all policies issued or
delivered in California and the impropriety of its actions, Defendant, with the aid and assistance of
DOES 1 through 10, made the conscious decision, ratified by their managerial agents, officers, and
directors, to not comply with the law, to misrepresent the true facts concerning the law, and
ultimately to unilaterally terminate the Policy on improper grounds.

139.    Defendant's bad faith continued when Defendant further made the conscious
decision to make no attempt to contact its policy owners whose policies had been illegally
terminated or beneficiaries whose claims for benefits had been improperly denied and inform such
individuals of Defendant's misconduct, despite knowledge of Defendant's violation of the
Statutes. Plaintiff's Policy was in force as of the date of the *McHugh* decision in 2021 and for
nearly two years afterward. During this time, Defendant could and should have made simple
efforts to communicate with Plaintiff and to amend the Policy and its procedures involving lapse to
conform to the Statutes. When Plaintiff's Policy was declared terminated, Defendant continued
this fraud and misrepresentation, and failed to inform Plaintiff of what the Statutes guaranteed
Plaintiff, and what Defendant failed to provide.

140.    Defendant, by and through its officers and directors and other managerial agents,
consciously ignored the application of California law regarding such notices and instituted a
business practice and course of conduct designed to intentionally violate such provisions. Knowing
these provisions were enacted in California to avoid forfeiture of policies, Defendant, by and
through its officers, consciously ignored and continues to consciously ignore the obligations
imposed on Defendant to avoid payment of claims and continues to maintain the practice of
encouraging unintended lapses of policies.

141.    Plaintiff has suffered and will continue to suffer injuries, economic and non-
economic damages, and harm legally caused by Defendant's past and ongoing failure to uphold the

terms of the Policy. Plaintiff has also suffered and will continue to suffer consequential economic and non-economic injuries in a nature and amount to be proven at the time of the trial. These injuries include emotional distress, concern, anger, and worry concerning the loss of coverage and as well as how Plaintiff has had to engage in this process merely to regain Plaintiff's coverage and the future benefits Plaintiff intended for Plaintiff's wife.

142.    Plaintiff has also been required to retain legal counsel and has and will continue to incur attorney's fees and expenses. Defendant's conduct is the legal cause of the need for these expenditures, for which, along with other actual injuries, damages, and future ongoing injuries and damages, Plaintiff seeks compensation in an amount within the jurisdiction of this Court to be proven at the time of trial. Plaintiff thus seeks full reimbursement of all attorney's fees and expenses incurred to obtain the benefits of the Policy.

143.    Based on overwhelming and clear evidence, as explained herein, these acts of Defendant will continue until Defendant is brought to account. The actions described herein all constitute malice, oppression, and fraud.

144.    Specifically, Defendant and its officers, directors, and managerial agents, have also made repeated intentional misrepresentations and engaged in active concealment, as heretofore discussed, thus constituting deceit and fraud. In performing these acts, Defendant and its officers, directors, and managerial agents participated or ratified active concealment of the rights of insureds with regards to termination of coverage for nonpayment to avoid incurring liabilities and costs associated with compliance with the law.

145.    Further, in engaging in these schemes and course of conduct, Defendant is acting in an oppressive fashion, using its wealth, power, and perceived influence, to attempt to coerce customers and beneficiaries to refrain from the costs and risks associated with litigation of this nature. Defendant's oppression is calculated and results from a conscious decision-making process where, at the highest levels in the company, it has been determined that it is more economical to defy compliance with the law and litigate those few policy owners or beneficiaries willing to engage in litigation, than merely comply with the law. The conduct described herein is malicious and consciously undertaken, with a full understanding and appreciation that it is contrary to the

30

law and contrary to sound business practices of legitimate life insurance companies.

146.    Plaintiff alleges that, consistent with California law, the cumulative effect and injury to others, as well as the economic benefit derived by Defendant from this improper conduct, are relevant and should be considered in the assessment of punitive and/or exemplary damages allowed. The conduct of Defendant, in violation of the express and implied obligations imposed on it, is and remains motivated by Defendant's conscious decision to retain wealth, resulting from decades of predatory business practices aimed at of taking from the elderly, the ill, and the misinformed. The nature and extent of those ill-gotten gains, as well as the cumulative financial injury suffered by others, are relevant and important considerations in determining the amount of any punitive or exemplary damages or awards.

## XII.    **PRAYER FOR RELIEF**

Plaintiff JAMES HUGHES, Individually, and on Behalf of the Class, prays for relief against Defendant as follows:

1.    For certification of this action as a class action;

2.    For a declaration of Plaintiff's and the Class's rights pursuant to the insurance policies issued by Defendant and a declaration that Defendant has violated the Statutes;

3.    For an injunction to issue against Defendant, stopping and remedying the ongoing violation of the Statutes, including public injunctive relief;

4.    For economic damages, according to proof where available;

5.    For noneconomic damages, according to proof where available;

6.    For restitution or other equitable relief, where available;

7.    For treble relief under Cal. Civ. Code § 3345;

8.    For punitive damages, where available;

9.    For interest, where available;

10.    For attorney's fees and all litigation costs and expenses where available; and

11.    For such other and further relief as this Court deems just and proper.

### XIII.   **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury.

DATED:  July 25, 2024                                   **WINTERS & ASSOCIATES**

By:     _/s/Jack B. Winters, Jr._
Jack B. Winters, Jr. (SBN 82998)
Sarah Ball (SBN 292337)
8489 La Mesa Blvd.
La Mesa, CA 91942
Tel (619) 234-9000
Fax (619) 750-0413
Email: jackbwinters@earthlink.net
Email: sball@einsurelaw.com

**NICHOLAS & TOMASEVIC LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Jake W. Schulte (SBN 293777)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: jschulte@nicholaslaw.org

**SINGLETON SCHREIBER, LLP**
Christopher R. Rodriguez (SBN 212274)
Andrew D. Bluth (SBN 232387)
Michelle M. Meyers (SBN 236387)
1414 K Street, Suite 470
Sacramento, California 95814
Telephone: (916) 248-8478
Email: crodriguez@singletonschreiber.com
Email: abluth@singletonschreiber.com
Email: mmeyers@singletonschreiber.com

Attorneys for Plaintiff,
JAMES HUGHES, Individually,
and on Behalf of the Class

INDIVIDUAL AND CLASS ACTION COMPLAINT; AND DEMAND FOR JURY TRIAL