UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | 5:24-cv-02079-AH-(MARx) | Date | August 22, 2025 |
|---|---|---|---|
| Title | *James Hughes v. Jackson National Life Insurance Company et al.* | | |

| Present: The Honorable | Anne Hwang, United States District Judge |
|---|---|

| Yolanda Skipper | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 44); GRANTING IN PART PLAINTIFF'S MOTION TO REMAND CASE (DKT. NO. 47); AND DENYING DEFENDANT'S MOTION TO STRIKE THE CLASS ACTION ALLEGATIONS AS MOOT (DKT. NO. 45)**

Before the Court is Defendant Jackson National Life Insurance Company's ("Defendant") Motion to Dismiss Plaintiff James Hughes's ("Plaintiff") Second Amended Complaint ("SAC") (Dkt. No. 44) and Motion to Strike the Class Action Allegations in Plaintiff's Second Amended Complaint (Dkt. No. 45). Also before the Court is Plaintiff's Motion to Remand Case (Dkt. No. 47). The matter is fully briefed, and the Court heard oral argument on August 20, 2025. For the reasons below, the Court GRANTS IN PART Plaintiff's Motion to Remand; GRANTS Defendant's Motion to Dismiss; and DENIES as moot Defendant's Motion to Strike the Class Action Allegations.

## I.    BACKGROUND

Defendant is a Michigan corporation engaged in business involving the sale and administration of life insurance. SAC, Dkt. No. 41, ¶ 8. Plaintiff is the owner

---

of a universal life insurance policy through Defendant. *Id.* ¶ 7. In August or
September of 2023, Plaintiff received a "Payment Notice" from Defendant. *Id.*
¶ 58. Payment was made, but Plaintiff alleges that around the same time, he
received notice that the policy had lapsed for nonpayment. *Id.* Plaintiff alleges
that Defendant did not utilize a 60-day grace period by failing to give Plaintiff
actual notice of the premium amount due. *Id.* ¶ 67. According to the SAC,
Defendant did not send any notice of pending lapse to Plaintiff or anyone else with
an interest in the policy. *Id.* ¶ 68. Plaintiff further alleges that "[a]t the time the
Policy lapsed, Mr. Hughes was financially capable of making any premium
payments required to keep the Policy in force and had no cause or reason to cease
making premium payments on the Policy. In fact, there is not now, nor has there
ever been, any evidence that Mr. Hughes did not want and desire to maintain this
investment." *Id.* ¶ 177.

Plaintiff sued Defendant on July 25, 2024 in the Superior Court of
California, County of Riverside, bringing individual and class claims for
Declaratory Relief, Breach of Contract, Unfair Competition, Financial Elder
Abuse, and Bad Faith. *See generally* Compl., Dkt. No. 1-1. Plaintiff alleges that
Defendant failed to comply with California Insurance Code Sections 10113.71 and
10113.72 (the "Statutes"). *Id.*

Defendant alleges that in August 2024, Defendant sent Plaintiff copies of the
required notices and his policies. Mot. to Dismiss, Dkt. No. 44, at 4. These notices
were dated July 24, 2023 and August 28, 2023, allegedly addressed to Plaintiff's
current mailing address and mailed by first class mail. *Id.* Defendant reinstated the
policy, funded the premium needed to keep the Policy in force through November
24, 2024, and does not seek to recover that premium from Plaintiff. *Id.*

Defendant removed this action from the Superior Court on September 27,
2024. Dkt. No. 1. Plaintiff filed the First Amended Complaint ("FAC") on January
6, 2025. Dkt. No. 21. On February 2, 2025, Defendant filed a Motion to Dismiss
Case, Dkt. No. 24, and Motion to Strike Class Action Allegations, Dkt. No. 25. On
May 22, 2025, the Court granted Defendant's Motion to Dismiss without prejudice
and without leave to amend as to Plaintiff's insufficient interest claims (Counts
Two and Four); granted the Motion to Dismiss with leave to amend as to Plaintiff's
declaratory relief, bad faith, elder abuse, and UCL claims (Counts One, Three,
Five, and Six); and granted in part Defendant's Motion to Strike Class Action
Allegations as to Counts One, Two and Four, without leave to amend as to Counts
Two and Four. Order, Dkt. No. 39.

Plaintiff filed the SAC on June 5, 2025. SAC, Dkt. No. 41. On June 20, 2025, Defendant filed a Motion to Dismiss SAC, Dkt. No. 44, and a Motion to Strike Class Action Allegations, Dkt. No. 45. Plaintiff filed Oppositions to both motions on July 9, 2025. Dkt. Nos 46, 48. Defendant filed a Reply to each Opposition on August 6, 2025. Dkt. Nos. 53, 54. Defendant also filed a Request for Judicial Notice in support of the motions on August 6, 2025.[1] Dkt. No. 55.

Additionally, Plaintiff filed a Motion to Remand on July 9, 2025. Dkt. No. 47. Defendant filed an Opposition on July 30, 2025, Dkt. No. 51, and Plaintiff replied on August 6, 2025, Dkt. No. 52.

## II.    LEGAL STANDARD

### A. Motion to Remand

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove a civil action in state court to federal court if the federal court has original jurisdiction. 28 U.S.C. § 1441(a). "CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). "[N]o antiremoval presumption attends cases invoking CAFA," because the statute was enacted "to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

"A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c); *see also Maniar v. FDIC*, 979 F.2d 782, 786 (9th Cir. 1992). A plaintiff waives procedural defects in a defendant's notice of removal by failing to timely object. *Friedenberg v. Lane Cnty.*, 68 F.4th 1113, 1121 (9th Cir. 2023).

---

[1] The Court does not rely on the matters for which judicial notice is sought.

## B. Federal Rule of Civil Procedure 12(b)(1)

A motion for lack of subject matter jurisdiction may be brought under
Federal Rule of Civil Procedure 12(b)(1). A defendant's challenge under Rule
12(b)(1) may be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d
1035, 1039 (9th Cir. 2004). A facial attack "accepts the truth of plaintiff's
allegations but asserts that they 'are insufficient on their face to invoke federal
jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting
*Safe Air for Everyone*, 373 F.3d at 1039). A factual attack "contests the truth of the
plaintiff's factual allegations, usually by introducing evidence outside of the
pleadings." *Id.*

"In resolving a factual attack on jurisdiction, the district court may review
evidence beyond the complaint without converting the motion to dismiss into a
motion for summary judgment." *Safe Air for Everyone*, 373 F.3d at 1039 (citation
omitted). The court need not presume the truthfulness of the plaintiff's allegations
in doing so. *Id.* "Once the moving party has converted the motion to dismiss into a
factual motion by presenting affidavits or other evidence properly brought before
the court, the party opposing the motion must furnish affidavits or other evidence
necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage
v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citation
omitted). Where "the jurisdictional disputes [are] not intertwined with the merits of
the claim" and "the existence of jurisdiction turn[s] on disputed factual issues," the
court may "resolve those factual disputes" where necessary. *Friends of the Earth v.
Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021) (citation and internal
quotation marks omitted).

## C. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed
because of a "failure to state a claim upon which relief can be granted[.]" Fed. R.
Civ. P. 12(b)(6). A dismissal under a 12(b)(6) motion can be based on either a
"lack of a cognizable legal theory" or on "the absence of sufficient facts alleged
under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534
F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citation omitted). On a
12(b)(6) motion, courts accept as true all well-pleaded allegations of material fact
and construe them in a light most favorable to the non-moving party. *See
Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030/31 (9th Cir.
2008). To survive a motion to dismiss, the complaint "must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not" suffice. *Id.* (internal quotation marks and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. A court may consider the allegations contained in the pleadings, as well as exhibits attached to or referenced in the complaint, and matters properly subject to judicial notice in ruling on a motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

Leave to amend a dismissed complaint should be granted unless it is clear the complaint cannot be saved by any amendment. Fed. R. Civ P. 15(a); *see Manzarek*, 519 F.3d at 1031. A "district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). "The district court's discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint." *Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir. 1986).

## III.    DISCUSSION

### A. Plaintiff's Motion to Remand

Plaintiff has moved for a partial remand on the grounds that "(1) There is no subject matter jurisdiction over the Declaratory Relief and Unfair Competition Claims pursuant to Article III of the U.S. Constitution; and (2) There is no equitable jurisdiction over the Declaratory Relief and Unfair Competition Claims." Dkt. No. 47, at 3. Plaintiff does not request that the elder abuse and bad faith claims also be remanded.

#### 1. Subject Matter Jurisdiction

Plaintiff does not deny that the Court has subject matter jurisdiction pursuant to CAFA and maintains that the fact this case was removed under CAFA makes no difference to his subject matter and equitable jurisdiction arguments. Mot. at 11; Reply at 18. "The rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as well to a case

removed pursuant to CAFA as to any other type of removed case." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016). Instead, Plaintiff argues that the UCL claim for injunctive relief must be remanded for lack of subject matter jurisdiction if the Court finds that "Mr. Hughes is not likely to be harmed in a similar way, because his policy has been reinstated." Mot. at 10. Plaintiff makes no argument as to the Court's subject matter jurisdiction of his declaratory relief claim, and as to that claim, appears to only argue that the Court lacks equitable jurisdiction. However, the Court addresses its subject matter jurisdiction over that claim below.

"For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citations omitted). "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 410 n. 5 (2013)).

Plaintiff argues that "the Court lacks subject matter jurisdiction over Plaintiff's injunctive relief claims because Plaintiff cannot demonstrate that he is in danger of being injured by Defendant again in the future." Reply at 17. The Court agrees. Plaintiff does not allege the threat of actual and imminent injury, particularly where Plaintiff claims that he intends to keep the Policy in force. When a plaintiff lacks Article III standing, "[r]emand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the federal courts have no power to adjudicate the matter." *Polo,* 833 F.3d at 1196. "State courts are not bound by the constraints of Article III." *Id.*

Defendant raises several arguments. First, Defendant argues that the motion is untimely, where Plaintiff waited 285 days after removal, filed three complaints, previously suggested the possibility of moving for remand in the face of a prior motion to dismiss but did not seek remand, and only sought remand after obtaining a ruling on the motion to dismiss, whereby the Court dismissed all claims. Opp'n at 4-5. However, as discussed above, 28 U.S.C. § 1447(c) provides that a motion to remand on the basis of any defect "other than lack of subject matter jurisdiction" must be made within 30 days. Moreover, if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Id.*; *see also Polo*, 833 F.3d at 1196.

Second, Defendant argues that remand of this claim would be futile. "Section 1447(c) states that a district court *shall* remand a removed case when it concludes that it lacks subject matter jurisdiction. But [Ninth Circuit] precedent recognizes a futility exception to that requirement. 'A narrow 'futility' exception to this general [remand] rule permits the district court to dismiss an action rather than remand it if there is 'absolute certainty' that the state court would dismiss the action following remand." *Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1189 (9th Cir. 2022) (emphasis and alterations in original) (citation omitted). "Where the remand to state court would be futile … the desire to have state courts resolve state law issues is lacking." *Bell v. City of Kellogg*, 922 F.2d 1418, 1424 (9th Cir. 1991) ("Because we are certain that a remand to state court would be futile, no comity concerns are involved. District court resolution of the entire case prevents any further waste of valuable judicial time and resources. The district court correctly denied the motion to remand and dismissed the state claims."). In *Sauk-Suiattle Indian Tribe*, the entire panel joined a concurrence by Judge Bennett calling for a reconsideration of the futility exception en banc because the exception does not comport with Section 1447(c)'s plain text. *Sauk-Suiattle Indian Tribe*, 56 F.4th at 1190. And in that case, the state court would lack jurisdiction for the same reason the district court lacked jurisdiction because the statute vested federal courts of appeals with exclusive jurisdiction over the action. "Thus, 'there is 'absolute certainty' that the state court would dismiss the action following remand[.]'" *Id*. at 1190 (citation omitted). Here, by contrast, Defendant's arguments, even those on which the Court has agreed and dismissed other claims or which Plaintiff has conceded,[2] rely on interpretation of California state law. Opp'n at 18-20.

---

[2] At the hearing on this motion, Defendant argued that the unpublished case of *Mayes v. American Hallmark Ins. Co. of Texas*, 2024 WL 3899231 (9th Cir. Aug. 22, 2024) mandates that the Court dismiss a claim where a "state court would dismiss the claim for the same reason," because "remand would be futile." *Id*. at *1. There, the district court had dismissed a claim because the plaintiff had not secured a final judgment against the insured and therefore could not bring a direct action against the insurer. As an unpublished opinion without significant analysis, it does not appear that the Ninth Circuit has mandated that whenever a district court issues a ruling on an issue applying state law, another claim raising the same issue must be dismissed rather than remanded. The facts of *Mayes* and *Sauk-Suiattle Indian Tribe* suggest that an "absolute certainty" arises when a procedural or similar defect makes clear that the state court would also dismiss, but not necessarily when the state court's application or interpretation of a particular issue might differ from that of the district court.

---

Although the legal principles are the same, they turn on California's interpretation and application of them.

Because Plaintiff lacks Article III standing for injunctive relief for his UCL claim, the Court lacks subject matter jurisdiction and remand of this claim is appropriate.[3]  Moreover, certain of the declaratory relief claims appear to fail for lack of an actual controversy under Article III, but the parties must provide further clarification, as discussed in greater detail below.

Accordingly, the Court GRANTS Plaintiff's Motion to Remand with respect to Plaintiff's injunctive relief claim under the UCL.[4]

2. Equitable Jurisdiction

"Equitable jurisdiction is distinct from subject matter jurisdiction, although both are required for a federal court to hear the merits of an equitable claim." *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1314 (9th Cir. 2022). While subject matter jurisdiction concerns "whether the claim falls within the limited jurisdiction conferred on the federal courts by Congress," equitable jurisdiction concerns "whether consistently with the principles governing equitable relief the court may exercise its remedial powers." *Id.* (quotations omitted); *see Yuba Consol. Gold Fields v. Kilkeary*, 206 F.2d 884, 887 (9th Cir. 1953) ("Reference to 'equity jurisdiction' does not relate to the power of the court to hear and determine a controversy but relates to whether it ought to assume the jurisdiction and decide the cause."). Equitable jurisdiction is a threshold jurisdictional question, and the plaintiff bears the burden to establish that he lacks an adequate legal remedy before he can obtain equitable relief. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) "In order to entertain a request for equitable relief, a district court must have equitable jurisdiction." *Guzman,* 49 F.4th at 1313.

In contrast with California state courts, federal courts sitting in diversity can only award equitable relief under state law if there is no adequate legal remedy. *Sonner*, 971 F.3d at 839 (explaining that the California legislature abrogated the

---

[3] Defendant argues that the Court may not partially remand the case.  However, as discussed in greater detail below, all other remaining claims, except for possibly certain declaratory relief claims over which the Court lacks Article III jurisdiction, are dismissed.

[4] Any remand is stayed pending resolution of the declaratory relief claims.

inadequate-remedy-at-law requirement for claims seeking equitable restitution under consumer protection statutes). Where "monetary damages provide[ ] an adequate remedy," a federal court may not consider the merits of equitable claims. *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75-76 (1992). Additionally, certain consumer protection statutes—including the UCL—provide only equitable remedies. *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (Ct. App. 2009) ("The remedies available in a UCL ... action are limited to injunctive relief and restitution."). Thus, in federal court, a plaintiff must establish that he lacks an adequate remedy at law before securing relief under the UCL. *See Sonner*, 971 F.3d at 844.

The Ninth Circuit has not concluded whether the absence of equitable jurisdiction in an action requires or permits remand, and is currently reviewing this issue on appeal. *See Ruiz v. The Bradford Exch., Ltd.,* 2024 WL 2844625, (S.D. Cal. May 16, 2024), appeal filed 24-3378 (9th Cir. May 29, 2024). However, as noted above, 28 U.S.C. § 1447(c) provides that a motion to remand the case must be made within 30 days after the filing of the notice of removal. The only stated exception in the statute is the lack of subject matter jurisdiction, and, as discussed above, "[e]quitable jurisdiction is distinct from subject matter jurisdiction." *Guzman*, 49 F.4th at 1314. To the extent the Court has discretion to remand the declaratory relief claim and UCL claim for restitution due to any lack of equitable jurisdiction, the Court declines to do so given the significant delay in bringing the Motion to Remand, particularly after the Court has already ruled on the merits of the claims without any prior objection by Plaintiff. *See, e.g., Demaria v. Big Lots Stores - PNS, LLC*, 2023 WL 6390151, at *8 (E.D. Cal. Sept. 29, 2023) (declining to remand UCL claim for equitable jurisdiction when motion was filed well after the 30-day deadline). And Plaintiff cites no authority for the proposition that the Court must remand the claims despite an untimely remand motion.

Accordingly, the Court DENIES Plaintiff's Motion to Remand the declaratory relief claim and the UCL claim for restitution.

## B. Defendant's Motion to Dismiss

### 1. Declaratory Judgment

Defendant argues that Plaintiff's claim for declaratory relief is moot because the policy was reinstated and argues that the Ninth Circuit has resolved the issues for which a legal declaration is sought. Mot., Dkt. No. 44, at 6. Plaintiff does not

clearly set forth the declarations he seeks, but rather seeks declaratory relief broadly and generally concerning the following issues: (1) The right to policy documents and notices of premium owed, SAC ¶¶ 122-123; (2) The effects of noncompliance with the Statutes, *id.* ¶¶ 124-130; (3) The effects of failure to provide proof of mailing and the effects of returned mail, *id.* ¶¶ 131-133; (4) Whether payment of premium must be made during a period of unlawful termination, *id.* ¶ 134; and (5) Whether an insured has a right to surrender charges when a termination occurs without compliance with the Statutes, *id.* ¶¶ 135-140. *See* Opp'n at 31.  In the prayer for relief, Plaintiff seeks a "declaration of Plaintiff's and the Class's rights pursuant to the insurance policies issued by Defendant and a declaration that Defendant has violated the Statutes." SAC at Prayer for Relief.

The Declaratory Judgment Act permits district courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. An actual controversy must exist for courts to issue declaratory relief. *Id.* Actions for declaratory relief must be "carefully limited in scope to meet the 'case and controversy' requirements of Article III of the Constitution." *Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1414 (9th Cir. 1990) (citations omitted). "A federal court cannot issue a declaratory judgment if a claim has become moot." *Pub. Utilities Comm'n of State of Cal. v. FERC*, 100 F.3d 1451, 1459 (9th Cir. 1996).

"Critically, the Statutes do not authorize a private right of action and the California Insurance Code classifies an insurance policy as a contract." *Small v. Allianz Life Ins. Co. of N. Am.,* 122 F.4th 1182, 1191 (9th Cir. 2024).  "Thus, the cause of action is breach of contract.  And for breach of contract, there must be damages *caused by* the breach."  *Id.* (emphasis in original).  "On the face of the legal claim that the Plaintiffs … are asserting, then, it would seem clear that Plaintiffs must show that the breach (in the form of a statutory violation) caused them to lose their policy coverage." *Id.*  "[T]he statutorily mandated terms are incorporated into the existing contracts."  *Id.* at 1195-96.  "Although the DJA allows a court to 'declare the rights and other legal relations of any interested party,'… it 'does not create new substantive rights[.]'" *Siino v. Foresters Life Ins. & Annuity Co*., 133 F.4th 936, 945 (9th Cir. 2025) (citations omitted).  "Instead, the DJA is a purely remedial statute that 'provides an affirmative remedy only when a cause of action otherwise exists.'"  *Id.* (citations omitted).  "Yet the fact that declaratory relief must arise from a 'valid legal predicate,' such as breach of contract … does not necessarily mean that declaratory relief requires proving the underlying claim."  *Id.* (citations omitted).  "Nevertheless, even the most liberal

construction that can be placed upon the DJA will not warrant the courts in granting affirmative relief by way of a declaratory judgment in the absence of pleading and proof warranting such relief." *Id.* (cleaned up). "In other words, what a claimant must prove to earn declaratory relief is context-specific: It may overlap entirely with the underlying claim, … or it may turn on certain smaller issues or topics to which the desired declaration pertains."[5] *Id.* at 946.

As an initial matter, the Court agrees with Defendant that Plaintiff does not sufficiently allege an actual controversy with regard to certain of the declaratory relief claims. Defendant establishes that it reinstated the Policy without charging back premiums.[6] *See* Woodell Decl., Dkt. 44-1, at ¶ 16 ("Jackson has not charged Mr. Hughes the amount Jackson funded into the Policy, and does not seek to recover that amount from him. Jackson treated the premium it funded as if it had been paid by Mr. Hughes directly, deducting the premium expense charge and monthly administrative and cost of insurance charges pursuant to the standard terms of the Policy."). Plaintiff alleges that Defendant has "threatened termination of coverage…, believes it can terminate coverage without proof of compliance through mailings or otherwise, and even apparently contends that in the case of a failure to comply, the insurer has no obligation to even investigate the effects of noncompliance." Opp'n, Dkt. No. 48, at 31. However, despite conceding the inability to plead a breach of contract claim,[7] certain of Plaintiff's requests for declaratory judgment do not demonstrate that there is a present controversy as to

---

[5] *Siino* provided as an example *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 3 F.4th 605 (4th Cir. 2021), where the plaintiff sought a declaration that defendant "materially breached the agreement," and the court therefore "only evaluated the sufficiency of the evidence regarding breach, and it rejected the defendant's argument that the plaintiff had been required to introduce evidence on all the elements of an action for breach of contract, including causation and damages." *Siino*, 133 F.4th at 946 (citing *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 3 F.4th 605, 609-10, 613-14 (4th Cir. 2021)). *Siino* then contrasted the requested declaration with the declaration sought in *Small*. *Id.*

[6] In any event, Plaintiff does not address Defendant's argument that the Ninth Circuit has held that insurers may charge back-premiums, or that the SAC does not appear to even dispute a policy owner's continuing obligation to pay premiums. *See* Mot. at 12. The Court does not reach this specific issue here.

[7] Counsel for Plaintiff acknowledged at the hearing that there are no contract damages.

which effective relief can be granted.[8]  *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008).  Specifically, for example, Plaintiff seeks a declaration that "the First Class Mail mailing requirements of Sections 10113.71 and 10113.72 mandate that a return of any notice from the USPS acts to void the notice compliance provisions of the Statutes," SAC ¶ 133, and a declaration that "Defendant is not entitled to premium payments for periods of time during which Defendant declared a policy terminated,"[9] SAC ¶ 134, but the SAC contains no allegations demonstrating that there is an actual controversy as to these issues.

Rather, Plaintiff merely seeks advisory opinions from the Court. What makes a declaratory judgment "a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in original). *See also Holland-Hewitt v. Allstate Life Ins. Co.,* 2024 WL 1304588, at *6 (E.D. Cal. Mar. 27, 2024) ("[C]ourts hold that class wide declaratory or injunctive relief is not available unless the named plaintiff is entitled to seek such relief."). However, federal courts "are not in the business of pronouncing that past actions which have no

---

[8] Plaintiff's opposition brief and various allegations in the SAC, *see, e.g.,* SAC ¶¶ 136-138, demonstrate that the purported disputes here do not relate to Mr. Hughes: "But, more importantly, thousands of other policy owners, like Mr. Hughes, paid what they believed their premium obligations were, never indicated any desire to discontinue their coverages, and their policy terminations did not comply with the 'strict compliance' required by their policies.  Today they are without life insurance, likely they are ignorant of their actual rights, and the passage of time and changing health conditions prevented reinstatement."  Opp'n at 28.  This does not explain what the present controversy is as to Mr. Hughes, who had his policy reinstated and no back premiums will be charged.

[9] The SAC alleges that "Defendant contends that it had the right to such premium payment, despite the fact that no actual coverage was in place during the process of reinstatement." SAC ¶ 134. However, as discussed above, Defendant establishes that it reinstated the Policy without charging back premiums and does not seek to recover any premiums.  *See* Woodell Decl., Dkt. 44-1, at ¶ 16 ("Jackson has not charged Mr. Hughes the amount Jackson funded into the Policy, and does not seek to recover that amount from him.  Jackson treated the premium it funded as if it had been paid by Mr. Hughes directly, deducting the premium expense charge and monthly administrative and cost of insurance charges pursuant to the standard terms of the Policy.").

---

demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998). Thus, "in the context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant." *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) (citing *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977)). Put another way, "a declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction." *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017).

Plaintiff also argues, in opposition to the Motion to Dismiss, that voluntary cessation precludes a finding of mootness. Opp'n, Dkt. No. 48, at 19. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (cleaned up). Here, however, Plaintiff expressly argues that he "cannot demonstrate that he is in danger of being injured by Defendant again in the future." Reply, at 17. Plaintiff has expressed his intent to maintain the policy.

Moreover, Plaintiff appears to continue to seek in part a legal declaration of obligations that have already been answered by *McHugh*: that Defendant must comply with the Statutes prior to terminating a policy for nonpayment. *See McHugh v. Protective Life Ins. Co.*, 12 Cal. 5th 213, 220 (2021); *see also Lee v. Great Am. Life Ins.*, 745 F. Supp. 3d 1006, 1023 n. 9 (C.D. Cal. 2024).

In addition, certain other declarations requested effectively appear to still seek a determination that Defendant previously violated the Statutes, and therefore remain insufficiently pled under *Small*: "Plaintiff desires a judicial determination of rights and duties and a declaration or judgment that Sections 10113.71 and 10113.72 must be complied with in order to terminate a policy for nonpayment of premium and that Defendant did not comply with respect to the Class policies." SAC ¶ 130. Plaintiff does not explain how these requested declarations are for the purpose of protecting himself as a "'shield' that [Plaintiff] might use 'to protect [himself] should [Defendant] seek payment' of overdue premiums," rather than being used as "an offensive 'sword' that [Plaintiff] could use to collect damages."[10]

---

[10] Although unclear, Plaintiff now appears to ground his claims in an insurance bad faith context or fraud, alleging that the harm is the lack of "peace of mind and knowledge that a policy of insurance is providing protection for the benefit of the

*Siino*, 133 F.4th at 947 (citation omitted).  As to certain claims, the issue is not a lack of Article III jurisdiction over an actual controversy, but a failure to adequately plead.

Plaintiff also adds a new request for declaratory relief regarding a policy owner's review of policy documents and notices of premium owed, SAC ¶¶ 122-123. Again, Plaintiff fails to allege an actual controversy to the extent these allegations relate to some future termination, and fails to allege causation and damages to the extent these allegations relate to Defendant's prior termination. Moreover, Plaintiff requests that the Court declare a right to general inspection of nonprivileged documents, stating that "[i]t is not unreasonable that if 'causation' is somehow relevant to an insurer's failure to properly terminate a life insurance policy, then under these provisions and any concept of fairness the policy owner should have a right of full access, save for disclosure of confidential information." Opp'n at 30. Plaintiff points to nothing in Defendant's policy creating this right and cites to no authority that the implied covenant extends to general inspection of policy documents outside the context of a lawsuit. Furthermore, Plaintiff references Insurance Code Section 10508(c) which "requires every insurer admitted in California to transact life and/or disability insurance to maintain certain records," but "does not require that the insurer produce the records described in the section to the insured or beneficiaries within any specified amount of time." *Fidelity & Guar. Life Ins. Co. v. Albertson*, 2008 WL 4861251, at *3 (S.D. Cal. Nov. 10, 2008).

---

beneficiary," SAC ¶ 98, rather than a breach of contract claim, for which he would have to allege causation and contract damages.  *See, e.g.,* Opp'n at 10 ("That is not the law of the state of California, which clearly recognizes the torts of bad faith and fraud, as well as claims based on the unfair competition laws – despite the absence of a beneficiary's claim for benefits."); *but see* Opp'n at 17 ("The SAC also outlines the need for declaratory relief to protect the contractual and statutory rights of both Plaintiff and the putative Class.").  Plaintiff acknowledged at the hearing that he cannot allege contract damages.  As noted above, declaratory relief is not an independent cause of action, creating new substantive rights or causes of action. Although Plaintiff broadly argues conduct sounding in fraud, particularly with regard to a lack of mailing of notice, *see* Opp'n at 14-17, the Court notes that no independent cause of action for fraud (or breach of contract) has been alleged in the SAC, other than as characterized in the bad faith and elder abuse claims, nor has fraud been sufficiently alleged in the declaratory relief cause of action.  The Court addresses the bad faith and elder abuse claims below.

The problem, however, is the lack of clarity regarding what relief Plaintiff is specifically seeking.  Accordingly, Plaintiff is granted to leave to amend to file an amended complaint listing each specific requested declaration in numerical order, and addressing the issues set forth herein.  The parties may then brief the issue regarding which claims should be dismissed and which should be remanded.

Finally, Plaintiff argues that attorney's fees incurred to obtain the "benefit" of the policy are recoverable. Opp'n at 20. This argument is unpersuasive to salvage his declaratory judgment claims because "the existence of an attorneys' fees claim thus does not resuscitate an otherwise moot controversy." *Cammermeyer v. Perry*, 97 F.3d 1235, 1238 (9th Cir. 1996). Plaintiff relies on *Brandt v. Superior Court*, 37 Cal.3d 813 (1985) for the proposition that "[w]hen an insurer's tortious conduct, such as a breach of the implied covenant of good faith and fair dealing or fraud, compels the insured to hire an attorney to recover policy benefits, those attorney's fees are recoverable as damages." *See* Opp'n at 21. However, "*Brandt* construed attorney's fees to constitute damages in the context of a breach of good faith and fair dealing claim—*i.e.*, a tort claim—*not* a breach of contract claim."[11] *Lim v. Lincoln Nat'l Life Ins. Co.*, 2025 WL 56412, at *4 (N.D. Cal. Jan. 9, 2025) ("While the money Plaintiff has spent on legal counsel may be relevant to her own bad faith claim, it does not demonstrate the essential damages component of her contract claim.").

Accordingly, Plaintiff's claim for declaratory relief is dismissed with leave to amend.

### 2.  Unfair Competition

California's Unfair Competition Law prohibits "unfair competition," which includes "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 ("UCL"). Remedies available to private plaintiffs under the UCL "are generally limited to injunctive relief and restitution." *Id.* at 179. "In the insurance context, allegations that are essential to plead a claim for violation of the UCL are: (1) plaintiff's status as an insured or intended beneficiary of the insurance policy, (2) the existence of the policy, (3) the insurer's conduct and that such conduct was an unfair, unlawful or fraudulent business practice in violation of Bus. & Prof. Code § 17200, (4) plaintiff has no adequate remedy at law, (5) a

---

[11] The Court discusses Plaintiff's bad faith claim below.

request for injunctive relief and or restitution (monetary damages are not recoverable under the UCL), and (6) a request for attorney's fees." *Bentley v. United of Omaha Life Ins. Co.*, 2016 WL 7443189, at \*6 (C.D. Cal. June 22, 2016) (citing *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1259 (C.D. Cal. 2003)).

In 2004, Proposition 64 changed who may sue to enforce the UCL to any person "who has suffered injury in fact and has lost money or property as a result of such unfair competition." *In re Tobacco II Cases*, 46 Cal. 4th 298, 314 (2009). To have standing under the UCL, plaintiffs must now "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011). "There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Id.* at 323.

Defendant argues that "because the Policy and its coverage have been reinstated, at no cost to Plaintiff, Plaintiff has lost neither money nor property." Mot. at 18. While Plaintiff argues generally that "despite revival of the policy, for a period of a year Defendant deprived Plaintiff of the value of the policy," Opp'n at 18, Plaintiff does not respond to Defendant's lost money or property argument, and has therefore conceded this argument. *See Reaves v. Ketoro, Inc,* 2020 WL 5488858, at \*8 (C.D. Cal. July 17, 2020) ("Courts in this district, and many others, have found that a failure to address an argument in opposition briefing constitutes a concession of that argument."). Moreover, Defendant cites authority for the proposition that, in certain cases, plaintiffs who receive a refund are unable to bring a claim under the UCL. Mot. at 18; *see e.g. Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1151 (N.D. Cal. 2010) (dismissing UCL claim for all Plaintiffs who received a refund); *Gonzales v. Comcast Corp.*, 2012 WL 10621, at \*5 (E.D. Cal. Jan. 3, 2012), report and recommendation adopted, 2012 WL 217708 (E.D. Cal. Jan. 23, 2012). Plaintiff again argues generally that "the policy that Plaintiff now possesses is of lesser value, cannot be borrowed against as before, given Plaintiff's commitments to counsel, and is otherwise a lesser life insurance product than prior to Defendant's violations of the law," Opp'n at 18, but Plaintiff

does not explain how the SAC sufficiently alleges that Plaintiff lost money or property as a result of the alleged unfair competition. Accordingly, Plaintiff's pleadings are insufficient to allege lost money or property under the UCL.

To the extent that Plaintiff requests restitution, Plaintiff has failed to state a claim under the UCL. *See* Opp'n at 19; FAC, Prayer for Relief ¶ 6. First, Plaintiff is "not entitled to refunds of already-paid premiums because they served as the sole consideration in exchange for the Policy." *Ok Hee Park v. AXA Equitable Life Ins. Co.,* 2023 WL 1931373, at *7 (C.D. Cal. Jan. 11, 2023); *see Benn v. Allstate Ins. Co.*, 569 F. Supp. 3d 1029, 1037 (C.D. Cal. 2021). Second, Plaintiff has not shown that any policy benefits were due, as discussed above. Even if benefits were withheld, courts have found requests for restitution "by which an insured seeks payment of benefits is, in effect, a claim for monetary damages, and, consequently, not cognizable under the UCL." *Ok Hee Park*, 2023 WL 1931373, at *7 (citing *Cook v. State Farm Gen. Ins. Co.*, 2022 WL 1225016, at *2 (N.D. Cal. Apr. 26, 2022)). Third, Plaintiff requests restitution for purported diminution in value of the insurance policy. While Plaintiff argues that the "policy is now essentially worthless by the presence of a charging lien on the policy wherein fees and expenses could be owed by his wife when and if Mr. Hughes dies," Opp'n at 19, Plaintiff does not demonstrate why the reinstated policy itself has decreased in value because of Defendant's purported failure to follow the statutes. *See Ok Hee Park,* WL 1931373, at *7. Accordingly, Plaintiff has not adequately stated a claim for restitution under the UCL and the Court dismisses this claim without leave to amend.

### 3. Bad Faith

"Under California law, 'insurance bad faith' refers to a breach of the implied covenant of good faith and fair dealing as that covenant applies to insurance policies." *Gentry v. State Farm Mut. Auto. Ins. Co.*, 726 F. Supp. 2d 1160, 1166 (E.D. Cal. 2010). "In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 992 (9th Cir. 2001). "The key to a bad faith claim is whether or not the insurer's denial of coverage was reasonable." *Id.*

Defendant argues that "Plaintiff's individual bad faith claim fails because the insured (Plaintiff) is alive and hence there were no policy benefits due, much less

any unreasonable withholding of policy benefits." Mot. at 15. Plaintiff does not dispute that no monetary benefits were due under the policy. Rather, Plaintiff argues that the "the policy 'benefit' is the peace of mind gained from having coverage, the investment in protection, and the policy owner's knowledge that a valuable investment exists for the protection of a loved one." Opp'n at 25. Plaintiff once again cites no authority that demonstrates how loss of these speculative benefits during life can support a claim for bad faith in the life insurance context.[12]

Plaintiff relies on *Spindle v. Travelers Ins. Companies*, 66 Cal. App. 3d 951 (Ct. App. 1977) for the proposition that "wrongful cancellation of insurance policies may give rise to a claim for bad faith." Opp'n at 24. *Spindle* was analyzed in *Jonathan Neil & Assoc., Inc. v. Jones*, 33 Cal. 4th 917 (2004), which held that "[t]here may be circumstances in which cancellation of the policy denies the insured the benefits of the policy." *Jonathan Neil,* 33 Cal. 4th at 941 (citing *Helfand v. Nat'l Union Fire Ins. Co.*, 10 Cal. App. 4th 869 (1992)). *Jonathan Neil*, however, cites to *Helfand*, in which a policy was cancelled for the purpose of avoiding imminent payments. *Helfand,* 10 Cal. App. 4th at 906. *See also Avery Dennison Corp. v. Allendale Mut. Ins. Co.*, 310 F.3d 1114, 1117 (9th Cir. 2002) ("Except perhaps in highly extraordinary circumstances, California does not permit recovery on a bad faith claim unless insurance benefits are due under the policy."); *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1153 (Cal. Ct. App. 1990) ("In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract. Thus, when benefits are due an insured, delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because it frustrates the insured's *primary* right to receive the benefits of his contract—i.e., prompt compensation for losses. Absent that primary right, however, the *auxiliary* implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings." (emphasis in original)).

---

[12] Although Plaintiff suggests that this claim cannot be decided on a motion to dismiss, rather than on summary judgment, the Court does not reach the issue of the reasonableness of Defendant's denial of coverage for approximately one year. Rather, the issue is whether Plaintiff has sufficiently alleged that benefits due under the policy were withheld.

Plaintiff does not argue that death benefits under the policy were ever due, [13]
that Defendant cancelled the policy to avoid imminent payment, or that there is a
sufficiently extraordinary circumstance here that California courts would
recognize. Plaintiff's "theory of breach goes beyond the limits of bad-faith claims,
which typically allege that the insured's right to receive insurance benefits has
been triggered and that the insured has interfered with the 'prompt compensation
for losses' by, among other things, 'inadequate or tardy investigations, [or]
oppressive conduct by claims adjusters seeking to reduce the amounts legitimately
payable[.]'" *Desai v. Lincoln Nat'l Life Ins. Co.*, 2024 WL 2835134, at *6 (E.D.
Cal. June 4, 2024) (citing *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995)).
Accordingly, Plaintiff has failed to sufficiently allege a claim for bad faith and the
Court dismisses this claim without leave to amend.

### 4. Elder Abuse

"A claim based on financial abuse under the Elder Abuse Act requires a
showing that a person or entity: (1) 'takes, secretes, appropriates, obtains, or
retains real or personal property' (2) of an elder or dependent adult; (3) for
wrongful use or with intent to defraud or both or (4) assist in such taking."
*Cousens v. Transamerica Life Ins. Co.*, 2023 WL 3564936, at *7 (C.D. Cal. Apr.
18, 2023) (citing Cal. Welf. & Instit. Code § 15610.30(a)(1)–(a)(2)). "Courts in this
district have found that, where a plaintiff has pleaded bad faith breach of an
insurance contract, 'the pleaded facts [alleging bad faith], taken in light of the
breadth of the statutory language, [can] support a claim under the Elder Abuse
Act.'" *Interiano v. Colonial Life & Accident Ins. Co.*, 460 F. Supp. 3d 945, 958
(C.D. Cal. 2020) (citing *Crawford v. Cont'l Cas. Ins. Co.*, 2014 WL 10988334, at
*1 (C.D. Cal. July 24, 2014)). "In other words, a claim for elder abuse in this
circumstance 'stands and falls on the trier of fact's finding that [the insurer] denied
[p]laintiff's valid claim in bad faith.'" *Ok Hee Park v. AXA Equitable Life Ins. Co.*,

---

[13] For this reason, Plaintiff does not allege any economic loss, but rather, relies on
allegations of emotional distress. *See Continental Ins. Co. v. Superior Court*, 37 Cal.
App. 4th 69, 85 (Cal. Ct. App. 1995) ("Plaintiffs argue that Continental's
unreasonable refusal to pay defense costs and the delay in effecting a settlement of
the underlying action caused the severe emotional distress and that they are entitled
to pursue their bad faith action irrespective of their lack of economic loss. This
contention ignores the fact that a claim for emotional distress in a bad faith action
cannot stand alone, but must be accompanied by some showing of economic loss.").

2023 WL 1931373, at *10 (C.D. Cal. Jan. 11, 2023) (citing *Johnston v. Allstate Ins.
Co.*, 2013 WL 2285361, at *4 (S.D. Cal. May 23, 2013)).

Plaintiff does not explain how the elder abuse claim is based on something
other than the denial of insurance coverage for approximately one year. As
discussed above, because Plaintiff failed to properly plead a claim of bad faith,
Plaintiff's claims for elder abuse also fail and the Court dismisses the claim
without leave to amend. *See Interiano*, 460 F. Supp. 3d at 958.

### 5. Leave to Amend

Leave to amend a dismissed complaint should be granted unless it is clear
the complaint cannot be saved by any amendment. Fed. R. Civ P. 15(a); *see
Manzarek*, 519 F.3d at 1031. However, while there is a "general rule that parties
are allowed to amend their pleadings, it does not extend to cases in which any
amendment would be an exercise in futility, or where the amended complaint
would also be subject to dismissal." *Steckman v. Hart Brewing*, 143 F.3d 1293,
1298 (9th Cir. 1998).

Plaintiff requests that "no rulings should preclude leave to amend after
further discovery" because Plaintiff alleges that Defendant is "concealing
substantial evidence concerning virtually every issue raised." Opp'n at 32. As
Plaintiff has amended his Complaint twice already and does not set forth how the
deficiencies can be cured, the Court finds that a further amendment would be futile
as to all claims except for the declaratory relief claim.

Thus, the Court GRANTS Defendant's Motion to Dismiss without leave to
amend.[14]

---

[14] The Court does not reach Defendant's numerous other arguments which were not
addressed by Plaintiff in opposition, including that there was no "pick off" attempt
(which the Court previously addressed), the inclusion of nominal damages does not
save Plaintiff's claims from mootness,  Plaintiff is foreclosed from requesting
declarations regarding causation and back-premiums, the newly added declarations
are not grounded in Policy, Plaintiff is not entitled to restitution under the UCL, and
the SAC fails to plead fraud with particularity. *See* Reply at 1. The Court finds that
Plaintiff's failure to address these arguments constitutes waiver and a concession
that they have merit. *See Reaves v. Ketoro, Inc,* 2020 WL 5488858, at *8 (C.D. Cal.
July 17, 2020) ("Courts in this district, and many others, have found that a failure to

### C. Defendant's Motion to Strike Class Action Allegations

In light of the Court's ruling herein, the Court declines to address Defendant's motion. Because the Court dismisses Plaintiff's claims for restitution, declaratory relief, bad faith, and elder abuse, and remands Plaintiff's claim for injunctive relief, the Motion to Strike Class Action Allegations is moot.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Plaintiff's Motion to Remand; GRANTS Defendant's Motion to Dismiss; and DENIES Defendant's Motion to Strike Class Action Allegations as moot.

The Court GRANTS Plaintiff's Motion to Remand with respect to Plaintiff's injunctive relief claim. The Court DENIES the Motion to Remand with respect to Plaintiff's restitution and certain of the declaratory judgment claims.

The Court GRANTS Defendant's Motion to Dismiss without leave to amend as to all claims except the declaratory relief claim. Plaintiff shall file and serve any amended complaint within 14 days.

Finally, in light of the Court's ruling herein, Defendant's Motion to Strike Class Action Allegations is DENIED as moot.

**IT IS SO ORDERED.**

---

address an argument in opposition briefing constitutes a concession of that argument.").